[Cite as *King v. King*, 2013-Ohio-3426.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
JACKSON COUNTY

| | | |
|---|---|---|
| WILLIAM SCOTT KING, | : | Case No. 12CA2 |
| | : | |
| Plaintiff-Appellee, | : | |
| | : | DECISION AND |
| v. | : | JUDGMENT ENTRY |
| | : | |
| BRITTNEY T. KING, | : | |
| | : | **RELEASED 8/2/13** |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

Brittney T. King, Tiffin, Ohio, pro se Appellant.

William Scott King, Jackson, Ohio, pro se Appellee.
_____

Harsha, J.

{¶1}    Brittney King appeals the trial court's judgment granting a divorce to the parties.  Initially she argues that the trial court erred by finding her boyfriend's use of corporal punishment "inappropriate" and ordering her to prevent the boyfriend from paddling the parties' children.  Nevertheless, Ms. King's boyfriend is not the natural parent of any of the children and there is no evidence in the record that Ms. King directed her boyfriend to use corporal punishment.  Because the court's order restricting a nonparent from unilaterally using corporal punishment is in the children's best interest and does not unreasonably infringe upon Ms. King's right to parent, it is neither unconstitutional or an abuse of discretion.

{¶2}    Next, Ms. King claims that the trial court erred by establishing the termination date of the marriage as February 12, 2010, but ordering child support effective August 15, 2011.  Because App.R. 16(A)(7) requires her to cite legal authority

in support of her assignment of error, and she failed to do so, we summarily reject this argument.

{¶3}    Ms. King also contends that the trial court abused its discretion by failing to find Mr. King voluntarily underemployed when calculating child support.  Ms. King argues that Mr. King voluntarily left his job working as an overseas private security consultant making $120,000 annually and now works as a trash collector making approximately $30,000 annually; thus, the trial court should have found him voluntarily underemployed.  Mr. King testified at trial that he ended his employment as a private security consultant because he needed to stay home and care for the children after filing for divorce.  Additionally, he testified that he applied to over 20 positions locally before accepting work as a trash collector and only made $40,000-$45,000 while previously working in Ohio.  Considering this evidence, we cannot say that the trial court abused its discretion by failing to find Mr. King voluntarily underemployed.

{¶4}    Ms. King also argues that the trial court erred by awarding Mr. King the tax dependency exemption for the minor children without first finding that it would result in a net tax savings to the parties.  Under R.C. 3119.82 there is a presumption in favor of granting the dependency tax exemption to the residential parent.  Before a trial court can grant the tax exemption to the nonresidential parent, it must find that it furthers the best interests of the children.  The best interests of the children are furthered if granting the nonresidential parent the dependency tax exemption results in a net tax savings to the parties.  Because the trial court simply granted the tax dependency exemption to Mr. King, the nonresidential parent, without making a finding that it would result in a net tax

savings to the parties and furthered the best interests of the children, we agree that it abused its discretion.

{¶5}    Ms. King also presents numerous arguments concerning the trial court's division of property.  She contends that the trial court erred by failing to classify the parties' assets as either marital or separate before dividing them and also that the court inequitably divided the property.  She further argues that the court erred by accepting Mr. King's valuation of specific assets and debts.  We agree that in violation of R.C. 3105.171(B) the trial court's entry does not classify the parties' property as marital or separate.  Although Ms. King claims that the court accepted Mr. King's valuation of certain property, our review shows that it never actually adopted his valuations or otherwise placed a value on any of the contested property.  Thus, we agree that the trial court erred by not valuing the parties' property before dividing it.

{¶6}    Next, Ms. King argues claims that the trial court erred by denying her spousal support.  Because property division is a factor that the court must consider in deciding whether to award spousal support we agree.  After the court makes a new allocation of property on remand, it must re-evaluate its decision on spousal support.

{¶7}    Finally, Ms. King contends that the trial court abused its discretion by failing to find that Mr. King committed financial misconduct.  She argues that Mr. King disposed of certain marital assets in violation of a mutual restraining order and implies that the trial court should have awarded her a distributive award or greater share of the marital property as a result.  Because, the trial court did not address the issue of financial misconduct in its entry and in light of our remand concerning the property distribution the court should revisit this issue also.

## I. FACTS

{¶8}    The parties married in 1991 and subsequently had four children.  In 2004, Mr. King took a position working out of the country as a private security consultant.  His schedule consisted of working out of the country for 90 days and then returning home for 30 days.  In early 2010, Ms. King left the martial home with the children.  Thereafter, Mr. King filed for divorce and ended his employment as a private security consultant.

{¶9}    The trial court awarded Mr. King temporary custody of three of the parties' children and Ms. King temporary custody of their oldest son.  After the matter proceeded to trial, the court granted the parties a divorce.  It designated Ms. King as the legal custodian and primary residential parent of the three minor children, as the parties' oldest child had reached the age of 18 by the time the trial court granted the divorce. The court granted Mr. King the dependency tax exemption for the children and ordered him to pay child support, but denied spousal support to either party.  The court also distributed the parties' property, including the martial home and vehicles.  This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶10}  Ms. King raises nine assignments of error for our review:

1. "TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO APPLY ANY PROPER LEGAL STANDARD WHEN IT ORDERED THE APPELLANT – BRITTNEY KING TO TAKE AFFIRMATIVE DUTY UPON BRITTNEY KING TO ASSURE TOD SCOTT DOES NOT USE PADDLING OR ANY OTHER FORM OF CORPORAL PUNISHMENT ON ANY OF THE CHILDREN.  THE TRIAL COURT AGAIN DEMONSTRATED PREJUDICE AND BIAS TOWARDS BRITTNEY KING BY SINGLING OUT THE APPELLANT'S BOYFRIEND SOLELY, ORDERING BRITTNEY KING TO NOT ALLOW THE MINOR CHILDREN TO BE SPANKED OR ANY FORMS OF CORPORAL PUNISHMENT TO BE ADMINISTERED BY THE BOYFRIEND."

2. "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT USED A DE FACTO TERMINATION DATE OF MARRIAGE AND IT WAS UNILATERAL NOT BILATERAL AND UNCLEAR FOR THE PURPOSE OF EQUITY DISTRIBUTION AND THEN ESTABLISHED THE DATE OF THE CHILD SUPPORT AS OF AUGUST 15, 2011."

3. "TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO FIND WILLIAM KING CULPABLE OF FINANCIAL MISCONDUCT WHEN THE PLAINTIFF IMPROPERLY AND CONTRARY TO LAW DISPOSED OF MARITAL ASSETS AND CONCEALED ASSETS WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

4. "TRIAL COURT ABUSED ITS DISCRETION AND RULED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT ACCEPTED MR. KING'S VALUATION OF THE 2005 HARLEY DAVIDSON MOTORCYCLE."

5. "TRIAL COURT ABUSED ITS DISCRETION AND WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IF[sic] FAILED TO FIND MR. KING VOLUNTARILY UNDER EMPLOYED AND FAILED TO IMPUTE INCOME FOR THE DETERMINATION OF CHILD SUPPORT."

6. "TRIAL COURT ABUSED ITS DISCRETION WHEN IT TOOK THE SOLE TESTIMONY OF MR. KING AND 'SPECULATED' THE TAX LIABILITY WAS $80,000 WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND AWARDED HIM MARTIAL ASSETS BASED OFF THE 'SUBSTANTIAL, POTENTIAL LIENS,' WHICH WAS CONTRARY TO LAW."

7. "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AWARDED MR. KING THE NON CUSTODIAL PARENT THE TAX DEPENDECU[sic]  EXEMPTION FOR ALL (3) THREE MINOR CHILDREN WITHOUT IDENTIFYING THE NET TAX SAVINGS THAT IT WOULD BE IN THE BEST INTEREST OF THE CHILDREN."

8. "TRIAL COURT ABUSED ITS SIDCRETION[sic] WHEN IT FAILED TO CONSIDER ALL THE RELEVANT FACTORS OF R.C. 3105.18 WHEN IT DENIED BRITTNEY KING SPOUSAL SUPPORT WHICH WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

9. "TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO CLASSIFY MARITAL ASSETS, AWARDED SEPARATE PROPERTY THAT WAS MARITAL PROPERTY TO MR. KING, AND OMITTED ASSETS FROM DIVISION AND AWARDED MR. KING 100% AND

BRITTNEY KING ZERO, WHICH WENT AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND ALLOWED MR. KING TO BE UNJUSTLY ENRICHED."

### III. LAW AND ANALYSIS

#### A.  Corporal Punishment

**{¶11}**  In her first assignment of error, Ms. King contends that the trial court abused its discretion by finding her boyfriend's use of corporal punishment inappropriate and ordering her to prevent him from using any form of corporal punishment on the parties' minor children.  She claims that the court erred by failing "to analyze any statues[sic] or factors when rendering its determination" and "only singl[ing] out" her boyfriend.

**{¶12}**  A parent has a fundamental liberty interest in the care, custody and management of his or her children. *In re D.P.*, 4th Dist. Nos. 11CA30, 11CA31, 2012-Ohio-3478, ¶ 11.  Accordingly, the Supreme Court of Ohio has recognized that a parent may use corporal punishment when disciplining his or her child, as long as they do not cause physical harm.  *State v. Suchomski*, 58 Ohio St.3d 74, 75, 567 N.E.2d 1304 (1991).

**{¶13}**  However, Ms. King's boyfriend is not the natural parent of the children, so he has no constitutional right to parenting.  *See Troxel v. Granville*, 530 U.S. 57, 65-66, 120 S.Ct. 2054, 147 L.Ed.2d 29 (2000).   Furthermore, there was no evidence presented at trial that Ms. King directed her boyfriend to use corporal punishment.  To the contrary, the only evidence presented concerning corporal punishment was that Ms. King's boyfriend had paddled the children in the past to discipline them.  Ms. King testified that her boyfriend disciplined her children "a couple of times" using a wooden

paddle to stop them from fighting or playing in the street. Although Ms. King has a "fundamental" right to parent, it is not absolute, and must be balanced against the paramount duty of the court to act in the best interests of the children. *In re M.H.*, 4th Dist. No. 11CA683, 2011-Ohio-5140, ¶ 49. *See also Rowell v. Smith*, 133 Ohio St.3d 288, 2012-Ohio-4313, 978 N.E.2d 146, ¶ 21.

{¶14} To support her argument, Ms. King points to the criminal statute for endangering children, R.C. 2919.22(B)(3). However, because it is criminal statute, a domestic relations court was not required to consider it before making its finding. Moreover, Ms. King fails to point out what other "statutes and factors" she believes the trial court was required to consider.

{¶15} However, Ms. King does point to numerous things in the record concerning Mr. King's behavior and argues the trial court showed "bias and prejudice" toward her by not also finding these behaviors inappropriate. But, none of these situations deal with Mr. King's discipline of the children, and therefore we do not consider them as support for her argument. The court determined that restricting a nonparent from unilaterally using corporal punishment is in the children's best interest. It does not unreasonably infringe upon Ms. King's right to parent, so it is neither unconstitutional or an abuse of discretion. Accordingly, we overrule her first assignment of error.

### B. Termination Date of the Marriage

{¶16} In her second assignment of error, Ms. King argues that the trial court erred by establishing the termination of date of the marriage as February 12, 2010, but ordering child support effective August 15, 2011. However, App.R. 16(A) requires that

the appellant "include in its brief, under the headings and in the order indicated * * * (7) An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." Nevertheless, Ms. King cites no legal authority to support her argument and it is not this court's function to construct a foundation for an appellant's claims. *May v. May*, 4th Dist No. 11CA910, 2012-Ohio- 2348, ¶ 21. Therefore, we may disregard any assignment of error that fails to present any citations to legal authority in support of its assertions. *Id.*

**{¶17}** We recognize that Ms. King has filed this appeal pro se, but "'like members of the bar, pro se litigants are required to comply with rules of practice and procedure.'" *Id.* at ¶ 22, quoting *Hardy v. Belmont Correctional Inst.*, 10th Dist. No. 06AP-116, 2006-Ohio-3316, ¶ 9. And because she makes no attempt to comply with App.R. 16(A)(7) by citing any authority or place in the record to support her second assignment of error, we summarily reject it.

C. Voluntarily Underemployed

**{¶18}** For ease of analysis we address Ms. King's remaining assignments of error out of order. In her fifth assignment of error, Ms. King argues that the trial court erred by failing to find Mr. King "voluntarily underemployed" when determining child support.

**{¶19}** "R.C. 3119.01(C)(11)(a) authorizes a court to impute income to a parent whom the court finds is voluntarily underemployed, for purposes of calculating child support." *Breedlove v. Breedlove*, 4th Dist. No. 08CA10, 2008-Ohio-4887, ¶ 14.

"[W]hether a parent is voluntarily (i.e. intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court.  Absent an abuse of discretion that factual determination will not be disturbed on appeal." *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993).  The term abuse of discretion means more than an error of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *Warner v. Warner*, 4th Dist. No. 12CA3511, 2013-Ohio-478, ¶ 9.

{¶20}  "In calculating child support, a trial court must determine the annual income of each of parent." *McLaughlin v. Kessler*, 12th Dist. No. CA2011-09-021, 2012-Ohio-3317, ¶ 13.  For an unemployed or underemployed parent, income is the "sum of the gross income of the parent and any potential income of the parent." *Id.*; R.C. 3119.01(C)(5)(b).  "However, before a trial court may impute income to a parent, it must first find that the parent is voluntarily unemployed or underemployed." *McLaughlin* at ¶ 13; R.C. 3119.01(C)(11).

{¶21}  In deciding if an individual is voluntarily underemployed "[t]he test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned." *Woloch v. Foster*, 98 Ohio App.3d 806, 811, 649 N.E.2d 918 (2nd Dist.1994).  Moreover, "[a] child support obligee who claims that the obligor is voluntarily underemployed has the burden of proof on that issue." *Fischer v. Fischer*, 2nd Dist. No. 11CA81, 2012-Ohio-2102, ¶ 24.

{¶22}  At trial, Mr. King testified that he earned a bachelor's degree in criminal justice from Ohio University in 2001 and thereafter attended Capital University Law School for two years, but did not graduate.  Before he finished college Mr. King testified

that he worked for various public service agencies, including the Ohio State Highway Patrol and the Ross County Sheriff's Office. While working for the Ross County Sheriff's Office he earned approximately $40,000-$45,000 a year and ended his employment in November 2000 to enroll in school full-time.

{¶23} Beginning in 2004, he worked out of the country as private security consultant earning $500-$550 per day. This equated to an approximate annual salary of $120,000. He explained that during this time he would typically work 90 days out of the country and then return home for 30 days. However, he ended his employment as a private security consultant in February 2010 and is currently working as trash collector for the City of Jackson earning $14.68 an hour.

{¶24} Mr. King testified that since he left his job as a private security consultant, he has applied to over 20 positions, including positions with the State of Ohio. Before finding work as trash collector Mr. King worked as a substitute teacher for "a couple of months" in 2011 earning $80-$100 a day.

{¶25} The only argument Ms. King presents in support of her claim that Mr. King is underemployed is the fact that he ended his employment as private security consultant and is now working as a trash collector. However, Mr. King testified that he "walked away" from his position as a private security consultant to stay home with his children. In fact, he explained that he ended his employment out of the country in February 2010, when he returned home and found Ms. King had left the family home with their children. After he filed for divorce, the trial court awarded him temporary custody of three of the parties' children so he needed to stay home and care for them. Additionally, the child support worksheet attached to the trial court's judgment entry

shows that Mr. King earns a gross income of $30,534. Although he was making substantially more money while employed overseas, his prior income while in Ohio is not unreasonably lower than his current income and Ms. King has presented no evidence to show that Mr. King earned anywhere near $500 a day while employed in Ohio. Thus, considering that Mr. King testified he applied to numerous positions locally before accepting work as a trash collector and his need to stay home with his children after filing for divorce, the trial court did not abuse its discretion by failing to find Mr. King voluntarily underemployed.

### D. Tax Dependency Exemption

{¶26} In her seventh assignment of error, Ms. King claims the trial court erred by awarding Mr. King the tax dependency exemption for the minor children without first finding that it would result in a net tax savings. We agree.

{¶27} A trial court enjoys broad discretion when allocating tax dependency exemptions. *Hurte v. Hurte*, 164 Ohio App.3d 446, 2005-Ohio-5967, 842 N.E.2d 1058, ¶ 29 (4th Dist.). Accordingly, we will not substitute our judgment for that of the trial court absent an abuse of discretion. *Id.*

{¶28} R.C. 3119.82 sets forth the procedure a trial court must follow when determining which party should receive the dependency exemption and states:

> If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes *only if the court determines that this furthers the best interest of the children * * *.* In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and

any other relevant factor concerning the best interest of the children.
(Emphasis added.)

**{¶29}** Accordingly, there is a presumption in favor of granting the dependency tax exemption to the residential parent. *Singer v. Dickinson*, 63 Ohio St.3d 408, 411, 588 N.E.2d 806 (1992). However, "[t]he allocation of the dependency exemption * * * may be awarded to the noncustodial parent when that allocation would produce a net tax savings for the parents, thereby furthering the best interest of the child." *Id.* at 415. "Such savings would occur through allocation to the noncustodial parent only if the noncustodial parent's taxable income falls into a higher tax bracket than the tax bracket of the custodial parent." *Id.* "In determining whether taxes would be saved by allocating the federal tax dependency exemption to the noncustodial parent, a court should review all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates." *Id.* at 416. "In the absence of evidence showing that the nonresidential parent would receive a net tax savings from the dependency exemption, the court must employ the presumption that the dependency exemption belongs to the residential parent." *Hurte* at ¶ 33.

**{¶30}** Here, the trial court ordered that Mr. King "shall claim the children as dependents for tax purposes." The court did not address the best interests of the children, nor any net tax savings to the parties. We can find no place in the record where Mr. King requested the tax dependency exemption. And, there is no evidence that the parties agreed about who should receive the exemption, as contemplated by R.C. 3119.82. Without evidence showing that the nonresidential parent would receive a net tax savings, the presumption in favor of granting the dependency tax exemption to

the residential parent controls.  Therefore, we agree that the trial court erred by granting

Mr. King, the nonresidential parent, the dependency tax exemption without first

determining whether it furthers the best interest of the children. *Hurte*, 164 Ohio App.3d

446, 2005-Ohio-5967, 842 N.E.2d 1058, at ¶ 33.  *See also Branden v. Branden*, 8th

Dist. No. 91453, 2009-Ohio-866, ¶ 37.  Accordingly, we sustain Ms. King's seventh

assignment of error.

### E. Division of Property

**{¶31}**  Ms. King's remaining assignments of error deal with the trial court's

division of property and failure to award spousal support.  In her ninth assignment of

error Ms. King argues that the trial court erred by failing to classify the parties' assets as

either martial or separate before dividing them and also omitting assets from its division.

She also complains that the trial court inequitably distributed the property.  In her fourth

and sixth assignments of error, she argues that the trial court erred by accepting Mr.

King's valuation of the Harley-Davidson motorcycle and the tax lien on the family home.

**{¶32}**  Trial courts must divide marital property equitably between the spouses.

R.C. 3105.171(B).  Usually, this requires that marital property be divided equally. R.C.

3105.171(C)(1).  "However, if the trial court determines that an equal division would

produce an inequitable result, it must divide the property in a way it deems equitable."

*O'Rourke v. O'Rourke*, 4th Dist. No. 08CA3253, 2010-Ohio-1243, ¶ 15; R.C.

3105.171(C)(1).  In contrast, "the court shall disburse a spouse's separate property to

that spouse * * *." R.C. 3105.171(D).  Because the trial court possesses great discretion

in reaching an equitable distribution, we will not reverse its division of property absent

an abuse of discretion. *O'Rourke* at ¶ 15.

**{¶33}** However, "[u]nder R.C. 3105.171(B), a court is under a mandatory duty to classify property in a divorce proceeding as either marital or separate before dividing the property." *Girton v. Girton*, 4th Dist. No. 08CA30, 2009-Ohio-4458, ¶ 6. And because "'[a] trial court must take into account marital debt when dividing marital property,'" it must also classify the parties' debts, as well as assets, before distributing their property. *Machesky v. Machesky*, 4th Dist. No. 10CA3172, 2011-Ohio-862, ¶ 10, quoting *Smith v. Emery-Smith*, 11th Dist. No. 2009-G-2941, 2010-Ohio-5302, ¶ 45.

**{¶34}** Furthermore, the trial court also must value the parties' property before distributing it. *Bray v. Bray*, 4th Dist. No. 10CA3167, 2011-Ohio-861, ¶ 28. "Indeed, a trial court must place a monetary value on every contested asset of the parties in a divorce proceeding." *Id.* "In any order for the division or disbursement of property or a distributive award made pursuant to [R.C. 3105.171], the court shall make written findings of fact that support the determination that the marital property has been equitably divided[.]" R.C. 3105.171(G). "[T]he trial court must make findings 'in sufficient detail to allow for meaningful appellate review of its decision.'" *O'Rourke* at ¶ 16, quoting *Knight v. Knight*, 4th Dist. No. 99CA27, 2000 WL 426167, *4 (Apr. 12, 2000). *See also Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988), paragraph two of the syllabus.

**{¶35}** Here, the trial court's entry does not classify any of the parties' property as marital or separate. Furthermore although Ms. King argues that the trial court erred by accepting Mr. King's valuation of the Harley-Davison motorcycle and the amount of the tax lien on the marital home, a review of the court's entry shows that it never actually placed a value on these items. In fact, the court did not place a monetary value on any

of the contested assets or make findings of fact to support that the property had been divided equitably between the parties.  Although the court summarized Mr. King's testimony regarding the value of the parties' vehicles, as well as the amount of the tax lien on the marital home, it did not adopt these values or otherwise valuate any of the parties' assets or debts.  Because the trial court did not make the necessary findings before distributing the parties' property, we sustain Ms. King's fourth, sixth and ninth assignments of error.

F. Spousal Support

{¶36}  In her eighth assignment of error, Ms. King claims that the trial court erred by denying her spousal support.

{¶37}  Under R.C. 3105.171(C)(3), "[t]he court shall provide for an equitable division of marital property * * * prior to making any award of spousal support to either spouse * * *."  R.C. 3105.18(C)(1) provides that in determining whether spousal support is appropriate and reasonable the court shall consider in part "(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code * * * (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties."  Property division is a factor the trial court must consider in deciding whether to award spousal support and we have already held that the trial court did not make the necessary findings to enable a meaningful review of its distribution.  Because we have sustained Ms. King's assignments of error dealing with the distribution of property, the trial court in this case must re-evaluate and clarify its property distribution on remand.  After doing so, the court must then revisit its decision

on the issue of spousal support.  To this limited extent, we sustain Ms. King's eighth assignment of error.

### G. Financial Misconduct

**{¶38}** Finally in her third assignment of error, Ms. King contends that Mr. King committed financial misconduct by disposing of martial assets after filing for divorce in violation of a mutual restraining order.  She implies that due to Mr. King's alleged financial misconduct, the trial court should have granted her a distributive award or greater share of the marital property.

**{¶39}** R.C. 3105.171(E)(4) authorizes the court to make a distributive award or greater award of marital property to one spouse upon a finding that the other spouse "has engaged in financial misconduct, including but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets."  "The decision of whether to make an award under this statute is reviewed for an abuse of discretion." *Jacobs v. Jacobs*, 4th Dist. No. 02CA2846, 2003-Ohio-3466, ¶ 22.  Furthermore, the burden of proving financial misconduct is on the complaining spouse. *Id.* at ¶ 25.

**{¶40}** Here, Ms. King claims that Mr. King improperly disposed of the parties' Mercedes Benz, two $2500 certificates of deposit, Dodge Neon, and Nissan van after filing for divorce.  In her answer and counter claim for divorce Ms. King requested a distributive award and both parties testified about the assets that Ms. King claims Mr. King improperly disposed of.  However, the trial court did not address these assets or financial misconduct in its entry.  Because we have determined the trial court's property distribution did not comply with the statutes and case law it must also revisit the issue of financial misconduct upon remand.

## IV. CONCLUSION

{¶41}  In conclusion we sustain Ms. King's third, fourth, sixth, and ninth assignment of errors, and in limited part her eighth assignment of error, and remand the case so that the trial court may classify the parties' property pursuant to R.C. 3105.171(B) as marital or separate, place a value on each contested asset and debt, consider any potential financial misconduct by either party and thereafter equitably divide the property and revisit the issue of spousal support.  In addition, we also sustain Ms. King's seventh assignment of error and remand the case so the court can consider whether awarding Mr. King the dependency tax exemption is in the children's best interests in accordance with R.C. 3119.82.  We overrule Ms. King's first, second, and fifth assignments of errors.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART, AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Jackson County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, P.J. & Abele, J.:  Concur in Judgment and Opinion.


For the Court



BY:   _____
            William H. Harsha, Judge




**NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**