[Cite as *Martindale v. Martindale*, 2019-Ohio-3028.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ATHENS COUNTY

LISA ANN MARTINDALE,                    :

    Plaintiff-Appellant,                :       Case No.   18CA17

    vs.                                 :

ERIC JOHN MARTINDALE,

                                        :       DECISION AND JUDGMENT ENTRY


    Defendant-Appellee.                 :

---

APPEARANCES:

Sierra Meek, Nelsonville, Ohio, and Micaela C. Deming, Bluffton, Ohio, for appellant.

Eric J. Martindale, Quakertown, Pennsylvania, pro se appellee.[1]

---

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED:7-22-19
ABELE, J.

{¶ 1} This is an appeal from an Athens County Common Pleas Court judgment that granted a divorce between Lisa Ann Martindale, plaintiff below and appellant herein, and Eric John Martindale, defendant below and appellee herein.

---

[1] Appellee has not filed an appellate brief. When an appellee fails to file an appellate brief, App.R. 18(C) authorizes us to accept an appellant's statement of facts and issues as correct, then reverse a trial court's judgment as long as the appellant's brief "reasonably appears to sustain such action." In other words, an appellate court may reverse a judgment based solely on consideration of an appellant's brief. *Harper v. Neal*, 4th Dist. Hocking No. 15CA25, 2016-Ohio-7179, 2016 WL 5874628, ¶ 14, citing *Fed. Ins. Co. v. Fredericks*, 2nd Dist., 2015-Ohio-694, 29 N.E.3d 313, 330–31, ¶ 79; *Sites v. Sites*, 4th Dist. Lawrence No. 09CA19, 2010-Ohio-2748, 2010 WL 2391647, ¶ 13; *Sprouse v. Miller*, Lawrence App. No. 06CA37, 2007-Ohio-4397, 2007 WL 2410894, fn. 1. In the case sub judice, however, we do not believe that appellant's brief reasonably appears to support a reversal of the trial court's judgment.

{¶ 2} Appellant assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY IMPUTING INCOME TO DEFENDANT AFTER FINDING THAT DEFENDANT WAS NOT VOLUNTARILY UNDEREMPLOYED."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY FINDING THAT DEFENDANT WAS NOT VOLUNTARILY UNDEREMPLOYED."

THIRD ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED WHEN IT CALCULATED DEFENDANT'S INCOME FOR CHILD AND SPOUSAL SUPPORT PURPOSES."

FOURTH ASSIGNMENT OF ERROR:

"THE COURT ERRED BY FAILING TO AWARD SANCTIONS AND COSTS REIMBURSEMENTS TO PLAINTIFF FOR DEFENDANT'S FINANCIAL MISCONDUCT, I.E. CONCEALMENT AND NON-DISCLOSURE, THROUGHOUT THIS COURT ACTION PURSUANT TO R.C. 3105.171 AND R.C. 2323.51."

FIFTH ASSIGNMENT OF ERROR:

"THE COURT ERRED IN DETERMINING THAT A DOMESTIC VIOLENCE SURVIVOR IS NOT ENTITLED TO CHILD OR SPOUSAL SUPPORT DUE TO COOPERATION WITH LAW ENFORCEMENT."

SIXTH ASSIGNMENT OF ERROR:

"THE COURT ERRED IN FAILING TO PROTECT THE RECORDS FOR THE CHILDREN DESPITE A COURT FINDING THAT THE PROTECTION WAS WARRANTED."

I

BACKGROUND

{¶ 3} Appellant and appellee married in March 2011.[2]   In November 2013, appellant and the parties' two young children left the Pennsylvania marital residence and returned to Athens, appellant's hometown.   At the time, appellee was employed as a Major in the United States Marine Corps and earned approximately $126,000 per year.

{¶ 4} Once appellant arrived in Ohio, a series of protracted legal proceedings began.

A

DOMESTIC VIOLENCE CIVIL PROTECTION ORDER

{¶ 5} In December 2013, appellant filed a petition for a domestic violence civil protection order in the Athens County Court of Common Pleas.   The trial court granted an ex parte civil protection order and set the matter for a full hearing.   In December 2015, the trial court denied appellant's request for a domestic violence civil protection order and terminated the ex parte order.

{¶ 6} In January 2016, appellant filed a motion for a new trial and asserted that she recently discovered new evidence relevant to her petition.   In particular, appellant claimed that on December 7, 2015, appellee admitted in a military court proceeding that he had struck appellant.   At that point, the trial court granted appellant's motion and held a new hearing to

---

[2] The present appeal is the third appeal involving the parties and we used our prior decisions to help formulate the background facts. *Martindale v. Martindale*, 4th Dist. No. 17CA5, 2017-Ohio-9266, 102 N.E.3d 19, 2017 WL 6616980 (*Martindale II*); *Martindale v. Martindale*, 4th Dist. Athens No. 14CA30, 2016-Ohio-524, 2016 WL 562864 (*Martindale I*).

consider the new evidence.

{¶ 7} At the hearing, appellant introduced appellee's written stipulation entered in the military court proceedings. In the stipulation, appellee agreed that in July 2013, "events escalated into a physical confrontation and [he] struck [appellant] one occasion. As a result of this altercation [appellant] developed a black eye." *Martindale II* at ¶ 27.

{¶ 8} The trial court subsequently granted the civil protection order and set it to expire in December 2018. Appellee appealed and we affirmed. *Id.*

B

COMPLAINT FOR LEGAL SEPARATION AND DIVORCE PROCEEDINGS

{¶ 9} In January 2014, appellant filed a complaint for legal separation in the Athens County Common Pleas Court. Appellee filed a complaint for a divorce in Pennsylvania and a motion to dismiss appellant's complaint for legal separation. Appellee claimed that, under the Uniform Child Custody Jurisdiction and Enforcement Act, the Athens County Common Pleas Court lacked jurisdiction over appellant's complaint. In July 2014, the trial court dismissed appellant's complaint.

{¶ 10} Around the same time, appellant gave birth to twins. One of the twins was born with muscular dystrophy and requires extensive medical care.

{¶ 11} Approximately one month after the twins' birth, appellant appealed the trial court's decision that dismissed her complaint for legal separation. In February 2016, we reversed and remanded the matter to the trial court so that it could consider all of the appropriate statutory factors regarding whether the Athens County Common Pleas Court is an inconvenient forum. *Martindale I* at ¶ 43.

{¶ 12} On remand, appellee (1) waived any jurisdictional argument, (2) filed an answer, (3) filed a counterclaim for divorce and (4) requested genetic testing of the twins. The test results indicated that appellee is the father of the twins.

C

FINAL HEARING

{¶ 13} In April 2017, the parties reached an agreement on all issues involved in the divorce proceedings, except appellee's child and spousal support obligations and the dependency exemption. The matter proceeded to a final hearing before a magistrate.

{¶ 14} The primary dispute at the hearing concerned the total amount of appellee's income for child support purposes. Appellant sought to show that appellee earned income from, not only his position with the Marine Corps, but also from two businesses that he formed. Appellant alleged that the trial court should include appellant's military income and the income he earned from the two businesses when it calculated his child support obligation. Appellant claimed that, when combined, the trial court should conclude that appellee's gross income was $192,720.95 for 2015, and $470,592.56 for 2016. Appellant arrived at these figures by arguing, in part, that appellee did not properly substantiate his business expenses.

{¶ 15} At the hearing, appellee testified that he was employed as a Major in the United States Marine Corps and that he earned $126,339.96 per year. Appellee further explained, however, that due to military court proceedings arising out of the allegations appellant made in her domestic violence civil protection order petition, he had to resign from the Marine Corps. Appellee later learned that his official date of separation from the military would be May 25, 2017.

{¶ 16} Appellee also stated that he currently operates two business: Suburban Street Trading, LLC aka American Integrity Products, an internet resale business through Amazon.com; and Legend Soap. Appellee testified that, although his businesses have struggled to make a profit, he hoped to be able to begin withdrawing an annual salary in the amount of $50,000 by the middle of 2017.

{¶ 17} Appellee introduced his 2015 American Integrity Products tax return that showed gross receipts in the amount of $113,093; costs of goods sold in the amount of $62,632; and gross profit in the amount of $50,462. The tax return showed total expenses in the amount of $53,868 and itemized each expense by category: advertising; car and truck; mortgage interest; legal and professional services; office expenses; rent of lease of business property; supplies; travel; meals and entertainment; tolls; Amazon services; website; phone and iPad; software; and shipping. Schedule C showed a net loss in the amount of $3,406. A Passive Activity Loss form showed that Legend Soap had a loss of $4,820.

{¶ 18} Appellee's 2016 tax return showed that Suburban Street Trading Co. LLC[3] had $312,637 in gross receipts, $203,629 in cost of goods sold, and $109,008 in gross profit. The expenses totaled $137,698. The return showed a loss of $28,690. Legend Soap again reported a loss of $4,820.

{¶ 19} Appellee stated that, to obtain the numbers for his tax return, he "count[ed] up all [his] receipts." He explained that twice per month he would reconcile his personal and business expenses on the credit card. Appellee indicated that every time he received his military paycheck, he reviewed the previous two weeks to locate all of the personal charges on his credit

---

[3] We observe that although the 2015 tax return referred to the entity as American Integrity Products, the 2016 tax return referred to the entity as Suburban Street Trading Co. LLC.

card. He stated that he used his military income to pay for the personal charges and that the rest of the charges he paid as business expenses with the income received from Amazon.

{¶ 20} Appellee testified that he calculated the cost of goods sold through Amazon's sellers central. Appellee related that going through each item was extremely time-consuming, so he did not calculate each item individually. Appellee explained that he instead took a "cross selection" to arrive at the cost-of-goods-sold figure. Appellee additionally related that, although he had not brought any evidence to the hearing to document his claimed business expenses, he had provided a box of receipts to appellant's counsel.

{¶ 21} Bryan C. Daulton testified that appellant retained him to help determine appellee's total income for child support purposes. Daulton explained that appellee did not follow generally accepted accounting practices and that the lack of an accounting system left Daulton unable to accurately determine appellee's income. Daulton stated that although he could review the tax returns, he could not explain the source of the numbers that appellee reported on the tax returns. Daulton did indicate that a business ordinarily would maintain a general ledger or some other method of tracking expenses. Daulton related that he reviewed the receipts appellee provided, but Daulton could not determine which receipts were for personal expenses and which receipts were for business expenses. Daulton testified that based upon the evidence appellee provided, Daulton could not determine the gross receipts appellee's businesses generated, the business expenses, or the cost of goods sold.

{¶ 22} Daulton also explained that he does not know whether appellee arbitrarily reported the numbers on his tax return or whether appellee had back-up documentation that appellee gave to the accountant who prepared his tax returns. Daulton stated that he does not believe that

appellee's tax preparer had a duty to audit appellee, but rather, the tax preparer has an obligation to believe that the data appellee provided is reasonable.

**{¶ 23}** In sum, Daulton testified that he could not verify appellee's income based upon the documentation appellee provided. Daulton reported: "[T]he accounting documents weren't provided that would have allowed [him] to verify what [appellee's] income is."

**{¶ 24}** Appellant testified and explained that she is a stay-at-home mother to the parties' four children: a five-year-old; a four-year-old; and twin two-year-olds. Appellant stated that one of the twins has been diagnosed with Muscular Dystrophy and that the child requires extensive and expensive medical care.

**{¶ 25}** Following the hearing, the magistrate entered a decision that found appellee's income to be $126,339.96 through the date of his separation from the military, and $50,000 effective May 26, 2017. The magistrate also determined that appellant had failed to pursue her claim for spousal support and, thus, did not address spousal support.

**{¶ 26}** Appellant filed timely objections to the magistrate's decision. Although she raised several objections, appellant's objections primarily centered upon the magistrate's calculation of appellee's income for child support purposes. In particular, appellant objected to the magistrate's determination that appellee's income before he separated from the military did not include any income from the two businesses that appellee operated. She alleged that appellee did not produce evidence to substantiate his claimed business expenses and cost of goods sold and that, without substantiation, the court must allocate the amount of gross receipts as income.

**{¶ 27}** Appellant additionally objected to the magistrate's failure (1) to find that appellee

is voluntarily unemployed; (2) to consider whether to award appellant spousal support; (3) to grant an upward deviation of child support due to the medical expenses incurred on behalf of the child with muscular dystrophy; (4) to award sanctions and cost reimbursements for appellee's purported financial misconduct; and (5) to restrict access to the children's records. Appellant further claimed that the magistrate mischaracterized Daulton's testimony.

{¶ 28} The trial court subsequently overruled all of appellant's objections, except her objection to the magistrate's finding that appellant chose not to pursue her claim for spousal support. The court determined that appellant did not waive her claim for spousal support and reviewed appellant's argument that the court should award spousal support. Subsequently, the court determined not to award appellant spousal support. In making its determination, the court first stated that it considered all of the statutory factors set forth in the spousal support statute, R.C. 3105.18. Additionally, the court observed that the parties were married for a short period of time (approximately two and one-half years). The court also noted that appellee no longer has the stability of his military income and that he is self-employed. The court stated that it considered the parties' available sources of income, the resources used to litigate the case, the parties' education, the parties' assets, and the tax consequences. The court concluded: "Considering all the statutory factors including, but not limited to the short period of time the parties were together, the court finds that [appellant] should not receive spousal support from [appellee] and that [appellee] shall not pay any amount in spousal support to [appellant] for any length of time."

{¶ 29} The trial court also considered appellant's objection to the magistrate's failure to find that appellee is voluntarily unemployed. The court found that appellee's separation from

the military resulted from "an incident" that occurred around the time of the parties' separation. The court observed that appellant's domestic violence allegations resulted in appellee being court martialed. The court further noted that appellee agreed to a non-judicial punishment on a charge of disorderly conduct and that appellee's admission meant that he would have to resign from the military. The court thus determined that appellee's separation from the military was involuntary and explained: "Although it is arguable that [appellee] caused his own discharge from the military as a result of an incident complained of by [appellant], the court finds that he resigned from the military over [appellant]'s pursuit of the allegations before a military court. The 'splitting of hairs' over whether [appellee] was coerced into forcing to resign to avoid a more deleterious outcome being imposed upon him does not sit well with the court." The court thus determined that appellee failed to establish that appellee's separation from the military was voluntary. As such, the court concluded that appellee is not voluntarily underemployed.

{¶ 30} The trial court next considered appellant's objections regarding the magistrate's calculation of appellee's gross income. The court agreed with the magistrate that appellee's annual gross income through the date of his separation from the military is $126,339.96.

{¶ 31} The court determined that appellee's businesses "have operated at a loss since their inception." The court did not believe that appellant introduced any evidence to show that appellee's tax returns are unreliable evidence of the businesses' income. The court observed that a licensed tax preparer completed the tax returns and, that as appellant's expert witness testified, a licensed tax preparer "has an independent duty * * * to be of the opinion that the information provided on the return is accurate provided that the information provided to the tax preparer is accurate." The court concluded that appellee's "tax returns are an accurate reflection

of his annual income at the time."

{¶ 32} The court also noted appellant's assertion that appellee provided the information to the tax preparer and that appellee did not provide accurate numbers. The court nevertheless concluded that appellee's testimony is "credible coupled with the other information provided concerning the operation of the business." The court specifically found that even though appellee's financial records "may not have been exemplary," appellee's "business and personal financial records were of sufficient detail for the court to determine both gross income and income for purposes of making calculations." The court also recognized that appellee commingled funds, but concluded that the amount of personal purchases "were not of such monetary significance to cause the court any great concern in determining [appellee's] income."

{¶ 33} The trial court also overruled appellant's objection to the magistrate's failure to appropriately credit her expert witness's testimony. The court found that the expert's testimony was "of very limited value" and that the magistrate appropriately relied upon appellee's tax returns when calculating his income. The court thus determined that it "may reasonably" rely upon the tax returns as evidence of appellee's income.

{¶ 34} The trial court further noted that appellee "offered little evidence, if any, to contradict [appellee]'s assertions but relies more upon argument why the figures should not be relied upon." The court concluded that the "child support calculation based upon the evidence presented at [the] hearing was reasonable." The court thus overruled appellant's objection to the magistrate's decision not to retroactively modify appellee's gross income to include

self-employment income of $66,380.99.[4]

{¶ 35} The trial court next determined that appellee's testimony regarding his business expenses is credible. The court also credited appellee's testimony that by the summer of 2017, he hoped to earn an annual salary of $50,000 from his business. The court thus found that effective May 26, 2017, appellee's income is $50,000 per year. The court additionally overruled appellant's objection that the magistrate failed to consider appellee's potential income. The court stated that "the magistrate properly considered any potential income when coming to the conclusion that Defendant's yearly income was imputed to be $50,000."

{¶ 36} The trial court also reviewed the statutory child support calculation worksheet, using $50,000 as appellee's "self-employment income." The court noted that the worksheet shows that appellee's monthly child support obligation is $1,061.33 when health insurance is provided, and is $1,061.33 plus cash medical support of $179.17 when private health insurance is not provided. The court determined, however, that an upward deviation is warranted. The

---

[4] We observe that when the trial court overruled appellant's objection to the magistrate's determination of appellee's gross income, the court's language could suggest that the court may not have complied with its duty to independently review the evidence and the magistrate's decision. The court stated: "this court finds that it is within the sound discretion of the court to determine [appellee]'s income. The court finds that the Magistrate's determination is supported by competent and credible evidence." We point out, however, that Civ.R. 53(D)(4)(d) requires a trial court when ruling on objections to "undertake an independent review as to the objected matters to ascertain that the magistrate properly determined the factual issues and appropriately applied the law."

   Although the court's statements, when read in isolation, may suggest that the court did not undertake an independent review, we further observe that "'[a] presumption of regularity attaches to all judicial proceedings.'" *Faulks v. Flynn*, 4th Dist. Scioto No. 13CA3568, 2014-Ohio-1610, 2014 WL 1510155, ¶ 27, quoting *State v. Raber*, 134 Ohio St.3d 350, 2012–Ohio–5636, 982 N.E.2d 684, ¶ 19. Appellate courts thus presume that a trial court independently reviewed a magistrate's decision. Moreover, the party claiming that the trial court did not independently review the magistrate's decision bears the burden of rebutting the presumption. *Faulks* at ¶ 27. In the case at bar, appellant did not argue that the trial court failed to comply with its duty to independently review the magistrate's decision. We thus will presume the regularity of the trial court's decision and presume that the trial court independently reviewed the magistrate's decision. We also recognize that other parts of the trial court's decision indicate that the court recognized its duty to independently review the magistrate's decision and that the language used in this instance appears to be an oversight.

court noted that the child with muscular dystrophy requires specialized care and that appellant spends $2,256 annually to provide for some of the child's special needs. The court thus ordered an upward deviation in the amount of $188 per month.

{¶ 37} The trial court further overruled appellant's objection to the magistrate's decision declining to grant her request for sanctions and costs reimbursements due to appellee's alleged financial misconduct. The court first observed that the magistrate had, in fact, awarded appellant $720 in sanctions. The court next determined that appellant did not meet her burden to prove financial misconduct, concealment, or non-disclosure.

{¶ 38} Next, the trial court overruled appellant's objection to the magistrate's failure to restrict access to the children's records. The court found that appellant failed to show that it should restrict appellee's access to the children's records.

{¶ 39} The court thus granted the parties a divorce and ordered appellee to pay child support. This appeal followed.

II

{¶ 40} Because appellant's first two assignments of error involve related issues, for ease of discussion we review them together.

{¶ 41} In her first assignment of error, appellant asserts that the trial court erred by imputing income to appellee without also finding that appellee is voluntarily underemployed. Appellant contends that a trial court cannot impute income to a parent for child support purposes unless the court first finds the parent voluntarily unemployed or voluntarily underemployed. In her second assignment of error, appellant argues that the trial court erred by failing to find that appellee is voluntarily underemployed. Appellant submits that appellee voluntarily chose to

engage in acts of domestic violence that ultimately led to his separation from the military. Appellant thus alleges that appellee's underemployment resulted from a voluntary decision and that the trial court, therefore, should have found appellee to be voluntarily underemployed.

A

STANDARD OF REVIEW

{¶ 42} Trial courts possess broad discretion when ruling on child support matters, including whether a parent is voluntarily unemployed or underemployed. *Rock v. Cabral*, 67 Ohio St.3d 108, 112, 616 N.E.2d 218 (1993), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). Thus, appellate courts will not reverse trial court decisions relating to child support matters, unless the trial court abused its discretion. *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, 2013 WL 5645778, ¶ 9 (2013); *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

{¶ 43} "'[A]buse of discretion' [means] an 'unreasonable, arbitrary, or unconscionable use of discretion, or * * * a view or action that no conscientious judge could honestly have taken.'" *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 67, quoting *State v. Brady*, 119 Ohio St.3d 375, 2008-Ohio-4493, 894 N.E.2d 671, ¶ 23. "An abuse of discretion includes a situation in which a trial court did not engage in a '"sound reasoning process."'" *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34, quoting *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). The abuse-of-discretion standard is "highly deferential" and does not permit an appellate court to simply substitute its judgment for that of the trial court. *State ex*

*rel. Cincinnati Enquirer v. Hunter*, 138 Ohio St.3d 51, 2013-Ohio-5614, 3 N.E.3d 179, ¶ 29 (explaining that reviewing court "will not lightly substitute [its] interpretation for that of the issuing court"). Indeed, "[d]iscretion necessarily connotes a wide latitude of freedom of action on the part of the trial court, and a broad range of more or less tangible or quantifiable factors may enter into the trial court's determination. [Thus], two trial courts could reach opposite results on roughly similar facts and neither be guilty of an abuse of discretion." *McGee v. C & S Lounge*, 108 Ohio App.3d 656, 661, 671 N.E.2d 589 (10th Dist. 1996). Moreover, to find that a trial court abused its discretion, "the result must be so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996). Accordingly, an appellant seeking to show that a trial court abused its discretion ordinarily bears a heavy burden. *Eichenlaub v. Eichenlaub*, 2018-Ohio-4060, 120 N.E.3d 380, 4th Dist.), ¶ 11.

B

IMPUTED INCOME

{¶ 44} In the case at bar, appellant initially alleges that the trial court incorrectly imputed income to appellee. She asserts that the trial court did not first find that appellee is voluntarily underemployed, and, in fact, the court found the opposite. Appellant thus contends that, without a finding that appellee is voluntarily underemployed, the court could not impute an annual income of $50,000 to appellee.

{¶ 45} We readily agree with appellant that, before a trial court may impute income to a parent, it first must find that the parent is voluntarily unemployed or underemployed. *Inscoe v.*

*Inscoe*, 121 Ohio App.3d 396, 424, 700 N.E.2d 70 (4ᵗʰ Dist. 1997), citing *Rock v. Cabral*, 67

Ohio St.3d 108, 616 N.E.2d 218 (1993), syllabus; R.C. 3119.01(C)(17)(a).   As we explain

below, however, we do not agree with appellant that the trial court actually imputed income to

appellee.   Instead, the entirety of the trial court's decision indicates that the court treated the

$50,000 salary appellee wished to begin drawing as "potential cash flow" under R.C.

3119.01(C)(7), and not as "potential income" imputed under R.C. 3119.01(C)(17)(a).

{¶ 46} R.C. 3119.01(C)(9) defines "income" to mean either of the following:

> (a) For a parent who is employed to full capacity, the gross income of the
> parent;
> (b) For a parent who is unemployed or underemployed, the sum of the
> gross income of the parent and any potential income of the parent.

R.C. 3119.01(C)(12) defines "gross income" as follows:

> "Gross income" means, except as excluded in division (C)(12) of this
> section, the total of all earned and unearned income from all sources during a
> calendar year, whether or not the income is taxable, and includes income from
> salaries, wages, overtime pay, and bonuses to the extent described in division (D)
> of section 3119.05 of the Revised Code; commissions; royalties; tips; rents;
> dividends; severance pay; pensions; interest; trust income; annuities; social
> security benefits, including retirement, disability, and survivor benefits that are
> not means-tested; workers' compensation benefits; unemployment insurance
> benefits; disability insurance benefits; benefits that are not means-tested and that
> are received by and in the possession of the veteran who is the beneficiary for any
> service-connected disability under a program or law administered by the United
> States department of veterans' affairs or veterans' administration; spousal support
> actually received; and all other sources of income.   "Gross income" includes
> income of members of any branch of the United States armed services or national
> guard, including, amounts representing base pay, basic allowance for quarters,
> basic allowance for subsistence, supplemental subsistence allowance, cost of
> living adjustment, specialty pay, variable housing allowance, and pay for training
> or other types of required drills; self-generated income; and potential cash flow
> from any source.

{¶ 47} Thus, "'[t]he statutory definition of income is very broad and includes * * *

potential cash flow from any source.'" *Corwin v. Hammer*, 4th Dist. Highland No. 07CA17, 2008-Ohio-2691, 2008 WL 2308899, ¶ 15, quoting *Howell v. Howell*, 167 Ohio App.3d 431, 2006-Ohio-3038, 855 N.E.2d 533 (2d Dist.), ¶ 50. "The definition of 'income' is intended to be both broad and flexible" in order "'to ensure that the best interests of children, the intended beneficiaries of child support awards, are protected.'" *Murray v. Murray* (1999), 128 Ohio App.3d 662, 666-668, 716 N.E.2d 288 (citation omitted), quoting *McQuinn v. McQuinn* (1996), 110 Ohio App.3d 296, 300-301, 673 N.E.2d 1384, 1387.

{¶ 48} In *Howell*, the Second District Court of Appeals noted that trial courts sometimes incorrectly identify "potential cash flow" as "imputed income." *Id.* at ¶ 54. The *Howell* court stated that even though trial courts may "sometimes use the phrase 'imputed income' when referring to potential cash flow, * * * that does not mean they have made a finding of voluntary unemployment or underemployment under R.C. 3119.01(C)(11)." *Id.* The court explained that "[u]sing the word 'imputed' is simply one way of describing potential income and does not mean that a Court has made a finding under R.C. 3119.01(C)(11) that income should be imputed because the obligor is unemployed or underemployed." *Id.*; *accord Smart v. Smart*, 3rd Dist. Shelby No. 17-07-10, 2008-Ohio-1996, 2008 WL 1849631, ¶¶ 25-26 (citing *Howell* and recognizing that trial court's incorrect classification of income as "imputed" rather than "potential cash flow" did not mean that court was required to find parent voluntarily underemployed).

{¶ 49} In the case at bar, we believe that, although the trial court used the phrase "imputed income," a review of the record indicates that the trial court calculated appellee's $50,000 annual salary as potential cash flow. Appellee stated that he hoped to begin

withdrawing a $50,000 annual salary from his self-employment. Appellee thus identified his self-employment as generating potential cash flow. The court also recognized that appellee identified $50,000 as the amount of cash he hoped to withdraw from the business. Although the trial court did not utter the phrase, "potential cash flow," the record suggests that the trial court intended to classify appellee's $50,000 annual salary as potential cash flow and not as imputed income. Had the court actually intended to impute income to appellee, then the court would have stated that appellee is voluntarily underemployed. Instead, the court specifically found that appellee is not voluntarily underemployed. We therefore believe that the trial court simply made an error in form, but not in substance, when it classified appellee's $50,000 annual salary as imputed income.

{¶ 50} Consequently, we disagree with appellant that the trial court incorrectly imputed income to appellee.

C

VOLUNTARILY UNDEREMPLOYED

{¶ 51} Appellant next claims that the trial court abused its discretion by failing to determine that appellee is voluntarily underemployed.

{¶ 52} Whether a parent is voluntarily underemployed, and the amount of any income to be imputed to the parent, are matters that a trial court must determine based on the particular facts and circumstances of each case. *Rock v. Cabral*, 67 Ohio St.3d 108, 616 N.E.2d 218, 615 N.E.2d 218 (1993), syllabus. Furthermore, a parent claiming that the other parent is voluntarily underemployed has the burden of proof on the issue. *E.g., King v. King*, 4th Dist. Jackson No. 12CA2, 2013-Ohio-3426, ¶ 21; *accord Ketchum v. Coleman*, 2d Dist. Miami No. 2013CA28,

2014-Ohio-858, ¶17.

{¶ 53} For purposes of the child support statute, the term "voluntary" means "done by design or intention, intentional, proposed, intended, or not accidental. Intentionally and without coercion." *Collins*, 2011–Ohio2087, at ¶ 27, quoting *Rock*, 67 Ohio St.3d at 111, fn. 2. In determining whether an individual is voluntarily underemployed, "'[t]he test is not only whether the [underemployment] was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned.'" *King v. King*, 4th Dist. Jackson No. 12CA2, 2013-Ohio-3426, ¶ 21, quoting *Woloch v. Foster*, 98 Ohio App.3d 806, 811, 649 N.E.2d 918 (2d Dist.1994). Additionally, a trial court need not find that a parent "intended to evade a higher support obligation by not obtaining employment commensurate with education, qualifications and ability" before it may find a parent voluntarily underemployed. *Rock*, 67 Ohio St.3d at 111. Instead, the principal "design and purpose" of the imputed income statute "are to protect and ensure the best interests of children." *Id.* Accordingly, "[t]he parent's subjective motivations for being voluntarily unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation." *Id.*

{¶ 54} In the case sub judice, appellant asserts that the trial court abused its discretion by failing to determine that appellee voluntarily resigned from his high-paying military job and that he thus is voluntarily underemployed. She contends that appellee chose to resign from the military in exchange for a non-judicial punishment. Appellant further alleges that appellee's resignation ultimately resulted from his voluntary decision to engage in domestic violence. For these reasons, appellant argues that the trial court should have found appellee to be voluntarily

underemployed.

{¶ 55} Some Ohio courts have determined that a parent who engages in an act of domestic violence or other misdeed that results in the termination of employment to be a voluntary act that allows a trial court to find the parent voluntarily under- or unemployed. *Courtney v. Courtney*, 12th Dist. Warren No. CA2013-09-087, 2014-Ohio-4281, 2014 WL 4802864 (sexual harassment) *Hahn v. Hahn*, 9th Dist. Medina No. 11CA0064-M, 2012-Ohio-2001, 2012 WL 1581824 (domestic violence)*; L.B. v. T.B.*, 2d Dist. Montgomery No. 24441, 2011-Ohio-3418, ¶ 16 (unspecified felony offenses); *Heropulos v. Heropulos*, 5th Dist. Stark No. 99CA00236, 2000 WL 700285 (May 8, 2000) (domestic violence); *Richardson v. Ballard*, 113 Ohio App.3d 552, 554, 681 N.E.2d 507 (12th Dist. 1996) (probation violation); *Brockmeier v. Brockmeier*, 91 Ohio App.3d 689, 693, 633 N.E.2d 584 (1st Dist. 1993) (misappropriation of funds). The underlying reason for finding a parent voluntarily underemployed or unemployed due to that parent's criminal conduct or other misdeeds is to protect the child's best interest. *Brockmeier*, 91 Ohio App.3d at 693–94. Allowing a parent to evade the parent's duty of support based upon voluntary criminal conduct or other misdeed would violate "'the fundamental and equitable principle that wrongdoers ought not benefit from their own wrongdoing.'" *Id.*, quoting *Williams v. Williams*, 10th Dist. Franklin No. 92AP-438, 1992 WL 246020, *1. As the *Williams* court aptly explained:

> A parent cannot, by intentional conduct or mere irresponsibility, seek relief from this duty of support. Defendant, who by his own wrongful conduct placed himself in a position that he is no longer available for gainful employment, is not entitled to relief from his obligation to support his child. Incarceration was a foreseeable result of his criminal conduct and is thus deemed a voluntary act in and of itself.

*Id.* at *1.

{¶ 56} In *Heropulos*, 5th Dist. Stark No. 99CA00236, 2000 WL 700285, for example, the father, a police officer, was charged and later convicted of domestic violence. After his conviction, the police department terminated his employment. The father later obtained a minimum wage job. The trial court determined that the father was voluntarily underemployed and refused to reduce the amount of his child support payment to account for his minimum wage job. The father appealed.

{¶ 57} On appeal, the court affirmed. The court noted that it had held in prior cases that "a violation of the law and subsequent incarceration are voluntary acts, not beyond the control of a child support obligor." *Id.* at *2, citing *Stewart v. Clay*, Stark App. No.1997CA00161, unreported (Dec. 15, 1997). Based upon its prior holding, the court thus determined that the father's "conviction for domestic violence and his subsequent termination based upon that conviction [was] a voluntary act." *Id.* The court additionally noted that the father "did not testify to any other specific, significant attempt to gain employment at an appropriate wage." *Id.* The court thus concluded that the trial court did not abuse its discretion by finding the father to be voluntarily underemployed.

{¶ 58} In *Courtney v. Courtney*, 12th Dist. Warren No. CA2013-09-087, 2014-Ohio-4281, 2014 WL 4802864, the court likewise determined that the trial court did not abuse its discretion by finding the parent to be voluntarily underemployed as a result of the parent's misdeeds. In *Courtney*, the father's employer terminated him after a co-worker alleged sexual harassment. Before his termination, the father had been employed as general counsel and earned an annual salary of $161,967. Following his termination, the father's employer

discovered that the father had stolen thousands of dollars from the company and the father later pleaded guilty to aggravated theft. After his conviction, the father's law license was suspended. The father subsequently obtained a job working at a retail store where he earned $10.50 an hour plus some unemployment compensation.

{¶ 59} In the divorce proceedings, the trial court found the father to be voluntarily underemployed for child support purposes and imputed income to him in the amount of $161,967. The father appealed. On appeal, the court affirmed the trial court's decision that the father was voluntarily underemployed. The court concluded that the father's "felony conviction and suspension from the practice of law can all be attributed to his voluntary and admittedly illegal acts." Id. at ¶ 12. The court thus determined that the trial court did not abuse its discretion by concluding that the father was voluntarily underemployed. The court further concluded, however, that the trial court had abused its discretion in determining the amount of income to impute to the father. The court reviewed the factors that a trial court must consider when determining the amount of income to impute to a parent and concluded that the court's decision to impute the same amount of income that the father earned while employed as a highly-compensated attorney was unreasonable and constituted an abuse of discretion. The court noted that although the father is highly-educated, his "ability to earn the imputed income [is] highly unlikely." Id. at ¶ 15. The court additionally observed that the father's "earning capacity is greatly reduced due to his felony conviction for aggravated theft." The court thus reversed the trial court's decision to impute potential income to the father in the amount of $161,967. Id.

{¶ 60} In Hornbeck v. Hornbeck, 2nd Dist. Clark No. 2018-CA-75, 2019-Ohio-2035,

2019 WL 2237041, on the other hand, the court determined that the trial court did not abuse its discretion by refusing to find a husband voluntarily underemployed for spousal support purposes. In *Hornbeck*, a few months before filing for divorce, the husband had been earning $52,000 per year. The husband, however, was forced to resign after his employer learned that the husband had not been following company directives. Later, the husband obtained a job that paid $11 per hour. During the divorce proceedings, the wife argued that the husband was voluntarily underemployed. The trial court disagreed, and the wife appealed.

{¶ 61} On appeal, the court determined that the trial court did not abuse its discretion by failing to find that the husband was voluntarily underemployed. The court concluded that the trial court was free to assess the husband's credibility when evaluating the husband's efforts to locate employment and that the court reasonably could have determined that the husband "was realizing his full employment capacity." *Hornbeck v. Hornbeck*, 2nd Dist. Clark No. 2018-CA-75, 2019-Ohio-2035, 2019 WL 2237041, ¶ 48. Accordingly, the court decided that the trial court did not abuse its discretion by refusing to find the husband to be voluntarily underemployed.

{¶ 62} In the case at bar, we, like the *Hornbeck* court, do not believe that we can characterize the trial court's refusal to recognize appellee as voluntarily underemployed as an abuse of discretion. Instead, the trial court reasonably could have concluded that appellee is not voluntarily underemployed. Appellee explained that he lost his military job as a result of agreeing to resign his commission in exchange for receiving a non-judicial punishment for the disorderly conduct charge. The record shows that, during the military court proceedings, appellee agreed that on one occasion in 2013, he struck the appellant. Additionally, appellee

stated that his military training is specialized and that he could not obtain a similarly high-paying position in the civilian workforce. Based upon the foregoing evidence, and considering that the trial court is in the best position to assess each witness's credibility, we cannot conclude that the trial court acted unreasonably by refusing to find that appellee is voluntarily underemployed.

{¶ 63} Moreover, even if we might have reached a different conclusion based upon the facts presented, the abuse-of-discretion standard does not allow us to simply substitute our judgment for that of the trial court. Rather, to find an abuse of discretion, an appellant must show that the trial court's decision is grossly violative of fact or logic. Here, we do not believe that appellant has demonstrated that the trial court's decision is grossly violative of fact or logic.

{¶ 64} Although we also recognize that other courts have concluded that a parent's voluntary misdeeds warrant a finding of voluntary underemployment, we are unaware of any Ohio case stating that a parent's voluntary misdeeds *require* a finding of voluntary underemployment. Instead, as the Ohio Supreme Court recognized in *Rock v. Cabral, supra*, the ultimate decision whether a parent is voluntarily underemployed rests within the sound discretion of the trial court to consider, based upon the unique facts and circumstances of each case. Again, in the case sub judice we do not believe that the trial court abused its discretion when it evaluated the unique facts and circumstances of this case and concluded that appellee is not voluntarily underemployed.[5]

_____

[5] We also recognize that R.C. 3119.05(I) sets forth circumstances when a court should not find a parent to be voluntarily unemployed or underemployed. The statutes provides:

> (I) Unless it would be unjust or inappropriate and therefore not in the best interests of the child, a court or agency shall not determine a parent to be voluntarily unemployed or underemployed and shall not impute income to that parent if any of the following conditions exist:
> (1) The parent is receiving recurring monetary income from means-tested public

{¶ 65} Accordingly, based upon the foregoing reasons, we overrule appellant's first and second assignments of error.

III

{¶ 66} In her third assignment of error, appellant asserts that the trial court failed to correctly calculate appellee's income for child and spousal support purposes. In particular, she contends that the trial court erred by failing to include the income appellee generated from his self-employed earnings when calculating his gross income. More specifically, appellant argues that the trial court should not have credited appellee's testimony regarding his business expenses. Appellant claims that without supporting documentation, the trial court could not accept appellee's testimony and tax returns as evidence of his gross income. Appellee thus submits that the trial court should have found that between January 1, 2015 and May 25, 2017, appellee earned $66,380.99 as gross income from self-employment.

{¶ 67} Appellant additionally raises many other issues within her third assignment of error, including: (1) the trial court "erred by incorrectly finding that '[i]n anticipation of his

assistance benefits, including cash assistance payments under the Ohio works first program established under Chapter 5107. of the Revised Code, general assistance under former Chapter 5113. of the Revised Code, supplemental security income, or means-tested veterans' benefits;

(2) The parent is approved for social security disability insurance benefits because of a mental or physical disability, or the court or agency determines that the parent is unable to work based on medical documentation that includes a physician's diagnosis and a physician's opinion regarding the parent's mental or physical disability and inability to work.

(3) The parent has proven that the parent has made continuous and diligent efforts without success to find and accept employment, including temporary employment, part-time employment, or employment at less than the parent's previous salary or wage.

(4) The parent is complying with court-ordered family reunification efforts in a child abuse, neglect, or dependency proceeding, to the extent that compliance with those efforts limits the parent's ability to earn income.

(5) The parent is incarcerated or institutionalized for a period of twelve months or more with no other available assets, unless the parent is incarcerated for an offense relating to the abuse or neglect of a child who is the subject of the support order or an offense under Title XXIX of the Revised Code against the obligee or a child who is the subject of the support order.

separation from the military, [appellee] began to pursue an on-line sales business"; (2) the court "erroneously concluded that" appellee's businesses have operated at a loss since inception; (3) the court mischaracterized her expert witness's testimony; (4) the court should have found that appellee is voluntarily underemployed and imputed income in the amount of $192,720.95; and (5) the court erred by failing to award appellant spousal support.

A

FAILURE TO SEPARATELY ARGUE ASSIGNMENTS OF ERROR

{¶ 68} We initially point out that appellant did not raise the five alleged errors identified in the preceding paragraph as separate assignments of error. The Appellate Rules require each assignment of error to be presented separately. Also, App.R. 12(A)(2) allows a court to "disregard an assignment of error presented for review if the party raising it * * * fails to argue the assignment separately in the brief, as required under App. R. 16(A)." Moreover, App.R. 16(A)(3) requires an appellant's brief to include "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." We further note that appellate courts determine an appeal "on its merits on the assignment of error[s]" and not on "mere arguments." App.R. 12(A)(1)(b); *State v. Johnson*, 4th Dist. Scioto No. 17CA3814, 2018-Ohio-4516, 2018 WL 5892659, ¶ 8; *State v. Ross*, 4th Dist. No. 16CA3771, 2017-Ohio-9400, 103 N.E.3d 81, ¶ 53.

{¶ 69} In the case at bar, we point out that appellant did not raise each error as a separate assignment of error. Therefore we may disregard any of the issues that appellant did not separately argue. However, when practical, we will address the issues appellant raises.

B

INCOME

{¶ 70} We again observe that we review a trial court judgment in child support matters for an abuse of discretion. *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, 2013 WL 5645778, ¶ 9. Thus, we should not disturb a trial court's decision regarding a parent's income, unless the court abused its discretion.

{¶ 71} In calculating child support, a trial court's starting point is the parent's "income." *Morrow v. Becker*, 138 Ohio St.3d 11, 2013-Ohio-4542, 3 N.E.3d 144, 2013 WL 5645778, ¶ 11; *Sweeney v. Sweeney*, 1st Dist. Hamilton No. C-180076, 2019-Ohio-1750, 2019 WL 2028714, ¶ 24; *King v. King*, 4th Dist. Jackson No. 12CA2, 2013-Ohio-3426, 2013 WL 4011916, ¶ 20. "Income" means "either gross income (for those employed to full capacity) or gross income plus potential income (for those not employed to full capacity)." *Id.*; R.C. 3119.01(C)(9). As we previously noted, the statutory definition of "gross income" is expansive and includes "the total of all earned and unearned income from all sources during a calendar year." R.C. 3119.01(C)(12). The definition of "gross income" also includes "self-generated income." *Id.*

> "Self-generated income" means gross receipts received by a parent from self-employment, proprietorship of a business, joint ownership of a partnership or closely held corporation, and rents minus ordinary and necessary expenses incurred by the parent in generating the gross receipts. "Self-generated income" includes expense reimbursements or in-kind payments received by a parent from self-employment, the operation of a business, or rents, including company cars, free housing, reimbursed meals, and other benefits, if the reimbursements are significant and reduce personal living expenses.

R.C. 3119.01(C)(19). Thus, a trial court that is determining the gross income of a self-employed parent must deduct "ordinary and necessary expenses incurred by the parent in generating the gross receipts." *Id.; accord Foster v. Foster*, 150 Ohio App.3d 298, 303, 2002-Ohio-6390.

(15)(a) "Ordinary and necessary expenses incurred in generating gross receipts" means actual cash items expended by the parent or the parent's business and includes depreciation expenses of business equipment as shown on the books of a business entity.

(b) Except as specifically included in "ordinary and necessary expenses incurred in generating gross receipts" by division (C)(15)(a) of this section, "ordinary and necessary expenses incurred in generating gross receipts" does not include depreciation expenses and other noncash items that are allowed as deductions on any federal tax return of the parent or the parent's business.

R.C. 3119.01(C)(15).

{¶ 72} Additionally, a court that is calculating the amount of child support must ensure that the "parents' current and past income and personal earnings [are] verified by electronic means or with suitable documents, including, but not limited to, paystubs, employer statements, receipts and expense vouchers related to self-generated income, tax returns, and all supporting documentation and schedules for the tax returns." R.C. 3119.05(A). Testimonial evidence concerning a parent's income is generally insufficient to satisfy R.C. 3119.05(A). *Basham v. Basham*, 3d Dist. Allen No. 1-02-37, 2002-Ohio-4694, 2002 WL 31007154, ¶ 7; *Brose v. Copeland*, 3d Dist. Seneca No. 13–13–08, 2013–Ohio–3399, ¶¶ 15–17; accord *Ellis v. Ellis*, 7th Dist. Mahoning No. 08 MA 133, 2009-Ohio-4964, 2009 WL 2999354, ¶ 60 ("[P]ursuant to R.C. 3119.05(A) a trial court is restrained to review documents, not testimony, to establish income.").

{¶ 73} Ohio courts have held that a trial court abuses its discretion by calculating income for child support purposes without requiring some form of documentary evidence listed in R.C. 3119.05(A). *In re M.C.M.*, 2018-Ohio-1307, 110 N.E.3d 694 (8th Dist.), ¶ 32 (concluding that trial court abused its discretion by failing to rely upon sufficient documentary evidence when calculating parent's income); *In re K.R.B.*, 2017-Ohio-7071, 95 N.E.3d 799 (8th Dist.), ¶ 26 (finding an abuse of discretion when record failed to contain documentary evidence to support

income-calculation); *Montgomery v. Montgomery*, 3rd Dist. Union No. 14-14-22, 2015-Ohio-2976, 2015 WL 4510904, ¶ 50 (determining that trial court abused its discretion when fixing income based solely upon parent's testimony); *Rymers v. Rymers*, 11th Dist. Lake No. 2011-L-064, 2012-Ohio-1675, 2012 WL 1288726, ¶ 29 (concluding that trial court abused its discretion when court failed to verify the parents' incomes with proper documentation); *Basham v. Basham*, 3d Dist. Allen No. 1-02-37, 2002-Ohio-4694, 2002 WL 31007154, at ¶ 8 (finding that trial court abused its discretion when record did not contain sufficient documentation to verify parent's income). As the *Montgomery* court explained: "'Allowing a party in a divorce proceeding to reduce his gross income level, and therefore his child support obligation, by testimony alone, without proper verification as required under R.C. 3119.05(A), is an abuse of the trial court's discretion.'" *Montgomery v. Montgomery*, 3rd Dist. Union No. 14-14-22, 2015-Ohio-2976, 2015 WL 4510904, ¶ 51, quoting *Ornelas v. Ornelas*, 12th Dist. Warren No CA2011–08–094, 2012–Ohio–4106, ¶ 25.

**{¶ 74}** Likewise, "[a] party claiming a business expense has the burden of providing suitable documentation to establish the expense." *Ockunzzi v. Ockunzzi*, 8th Dist. Cuyahoga No. 86785, 2006-Ohio-5741, at ¶ 53. We also note that a trial court is not required to "blindly accept all of the expenses appellant deducted in previous [tax] returns as ordinary and necessary expenses incurred in generating gross receipts." *Dressler v. Dressler*, Warren App. No. CA2003–05–062, 2004–Ohio–2072; *Flege v. Flege*, Butler App. No. CA2001–09–225, 2002–Ohio6105; *Cutter v. Cutter* (Jan. 31, 1994), Butler App. No. CA93–05–091.

**{¶ 75}** We recognize that some courts require a self-employed parent to "submit documentation in the form of receipts and expenses" to the trial court to verify the amounts

reported on the parent's tax returns. *In re I.A.G.*, 8th Dist. Cuyahoga No. 98088, 2012-Ohio-4403, 2012 WL 4462875, ¶ 18. The *I.A.G.* court reasoned that without receipts and expenses, a trial court cannot possibly "determine if the amounts set forth on the tax documents are valid." *Id.* We note, however, that "[i]t is not the duty of the trial court to ferret out those expenses that qualify as ordinary and necessary." *In re Sullivan*, 11th Dist. No. 2005-G-2641, 167 Ohio App.3d 458, 2006-Ohio-3206, 855 N.E.2d 554, 2006 WL 1725967, ¶ 25. Additionally, the Ohio Department of Jobs and Family Services' Child Support Guideline Manual states that a trial court may determine self-employed income by examining income and expenses as reported on Schedule C.[6] The Manual does not, however, indicate that a parent must produce receipts or other documents in order to prove the validity of the expenses reported on Schedule C. Furthermore, this court previously determined that a trial court does not abuse its discretion by allowing a parent to establish self-employment income without producing receipts. *Douglass Makni v. Makni*, 4th Dist. Pike No. 01CA680, 2002-Ohio-5098, 2002 WL 31131877. In *Makni*, the parent produced a document entitled, "Occasional Income," to establish his self-employment income. The appellant asserted that the trial court could not rely upon the figures the parent reported in the document and alleged that the parent is required to submit evidence to illustrate how the parent arrived at the income figures. We did not agree. We stated: "In the absence of evidence to the contrary except for appellant's undocumented assertions, we cannot say that the trial court abused its discretion." *Id.* at ¶ 17.

{¶ 76} In the case at bar, we likewise disagree with appellant that the trial court abused its discretion when it calculated appellee's self-employment income and deducted the business

---

[6]See http://www.odjfs.state.oh.us/forms/num/JFS07766/pdf/ at 7.

expenses he claimed on his 2015 and 2016 tax returns. The trial court acted within its discretion by relying upon the figures reported on appellee's tax returns and is not required to dig through receipts or other documents to determine whether appellee properly reported the figures. Instead, the court noted that appellee had provided receipts to the accountant who prepared his tax returns. The court thus determined that appellee's tax returns accurately reported his business expenses.

{¶ 77} Moreover, we disagree with appellant that *Siferd v. Siferd*, 3rd Dist. No. 5-17-04, 2017-Ohio-8624, 100 N.E.3d 915, 2017 WL 5565495, requires us to find that the trial court abused its discretion when determining that appellee's businesses had not produced any income during the years 2015 and 2016. In *Siferd*, "the extent of the information that [the parent] provided to the court was one tax return from 2014, one financial disclosure form that recorded his monthly personal expenses for 2015, and one expense report from 2016." *Id.* at ¶ 22. In contrast, in the case at bar, appellee produced his 2015 and 2016 tax returns, as well as bank statements and documents obtained from Amazon's seller services center. We therefore find *Siferd* inapposite.

{¶ 78} Consequently, we disagree with appellant that the trial court abused its discretion by rejecting her request to modify the past child support order and find that appellee had self-employment income in the amount of $66,380.99.

## C

## VOLUNTARILY UNDEREMPLOYED

{¶ 79} Within the argument section of her third assignment of error, appellant also asserts that the trial court erred by failing to find that appellee is voluntarily underemployed. We

believe, however, that we adequately addressed the issue earlier in this opinion.[7]

{¶ 80} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error.

IV

{¶ 81} In her fourth assignment of error, appellant asserts that the trial court erred by failing to award sanctions and cost reimbursements for appellee's financial misconduct. She contends that appellee repeatedly failed to comply with discovery requests and states that she "fully explained her request for sanctions via her Proposed Findings of Facts #42-56 and reiterates those arguments as if fully re-written herein." Appellant does not otherwise elaborate upon her claim of financial misconduct.

{¶ 82} R.C. 3105.171(E)(4) authorizes a trial court to make a distributive or greater award of marital property to one spouse upon a finding that the other spouse "has engaged in financial misconduct, including but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets." The burden of proving financial misconduct is on the complaining spouse. *Jacobs v. Jacobs*, 4th Dist. Scioto No. 02CA2846, 2003–Ohio–3466, ¶ 25. "There must be a clear showing that the offending spouse either profited from the alleged misconduct or intentionally defeated the other spouse's distribution of assets." *Id.* at ¶ 23, citing *Wideman v. Wideman*, 6th Dist. Wood No. WD–02–30, 2003–Ohio–1858, ¶ 34; *accord Murphy v. Murphy*, 4th Dist. Lawrence No. 07CA35, 2008–Ohio–6699, 2008 WL 5265673, ¶ 45.

---

[7]Also within her third assignment of error, appellant asserts that the trial court erred by failing to award spousal support. For ease of discussion, however, we will address the spousal support issue in the context of appellant's fifth assignment of error.

**{¶ 83}** We also observe that R.C. 3105.171(E)(5) permits a trial court to make a distributive award "[i]f a spouse has substantially and willfully failed to disclose marital property, separate property, or other assets, debts, income, or expenses."

**{¶ 84}** Appellate courts will review a trial court's decision concerning a distributive award under R.C. 3105.171(E)(4) or (5) for an abuse of discretion. *Vulgamore v. Vulgamore*, 4th Dist. Pike No. 16CA876, 2017-Ohio-4114, 2017 WL 2427595, ¶ 30. In the case sub judice, after our review of the evidence we are unable to conclude that the trial court abused its discretion by denying appellant's request for a distributive award under R.C. 3105.171(E)(4) or (5). The trial court was in the best position to evaluate all of the circumstances of the case, and we are ill-suited to second-guess the trial court's finding that appellee did not engage in financial misconduct or substantially and willfully failed to disclose property and other items.

**{¶ 85}** For similar reasons, we disagree with appellant that the trial court abused its discretion by failing to award her sanctions beyond the $720 already awarded.

**{¶ 86}** Accordingly, based upon the foregoing reasons, we overrule appellant's fourth assignment of error.

V

**{¶ 87}** In her fifth assignment of error, appellant challenges the trial court's failure to award spousal support. She charges that the court denied her request for spousal support based upon her decision to report appellee's domestic violence to law enforcement.

**{¶ 88}** Trial courts generally have broad discretion and "wide latitude" when evaluating the appropriateness, reasonableness, and amount of a spousal support award. *E.g., Kunkle v. Kunkle*, 51 Ohio St.3d 64, 67, 554 N.E.2d 83 (1990); *Bolinger v. Bolinger*, 49 Ohio St.3d 120,

122, 551 N.E.2d 157 (1990); *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981);

*Clifford v. Skaggs*, 4th Dist. Gallia No. 17CA6, 2017-Ohio-8597, 2017 WL 5513569, ¶ 9.

Consequently, a reviewing court will not reverse a trial court's spousal support decision absent

an abuse of discretion. *Clifford* at ¶ 9; *e.g., Bechtol v. Bechtol*, 49 Ohio St.3d 21, 24, 550

N.E.2d 178 (1990); *Holcomb v. Holcomb*, 44 Ohio St.3d 128, 131, 541 N.E.2d 597 (1989).

{¶ 89} R.C. 3105.18(B) allows trial courts, upon a party's request and after distributing

property, to award reasonable spousal support. R.C. 3105.18(C)(1) sets forth the factors that a

trial court must consider when "determining whether spousal support is appropriate and

reasonable, and [when] determining the nature, amount, and terms of payment, and duration of

spousal support":

> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
> (b) The relative earning abilities of the parties;
> (c) The ages and the physical, mental, and emotional conditions of the parties;
> (d) The retirement benefits of the parties;
> (e) The duration of the marriage;
> (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
> (g) The standard of living of the parties established during the marriage;
> (h) The relative extent of education of the parties;
> (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
> (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;
> (k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;
> (l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

**{¶ 90}** A trial court evaluating the propriety of a spousal support award must consider all of the statutory factors and not base its determination upon any one factor taken in isolation. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 518 N.E.2d 1197 (1988), paragraph one of the syllabus. Additionally, although a trial court possesses broad discretion to determine whether a spousal support is reasonable and appropriate, it must consider the statutory factors and must indicate the basis for a spousal support award in sufficient detail to enable a reviewing court to determine that the award complies with the law. *Kaechele* at paragraph two of the syllabus. If the record reflects that the trial court considered the statutory factors, and if the judgment contains details sufficient for a reviewing court to determine that the support award is fair, equitable, and in accordance with the law, the reviewing court will uphold the award. *Eichenlaub v. Eichenlaub*, 2018-Ohio-4060, 120 N.E.3d 380 (4th Dist.), ¶ 13.

**{¶ 91}** In the case at bar, we do not agree with appellant that the trial court determined that "due to [appellant] reporting the domestic violence perpetrated by [appellee] to law enforcement and cooperating with their investigation and subsequent prosecution, she is per se not entitled to an award of spousal support." Instead, the trial court's decision reveals that it considered the appropriate statutory factors and did not base its decision on any one factor in isolation. Specifically, the trial court found that appellee "is no longer employed as a Marine and is self employed" and that "the parties were married a relatively very short period of time." The court also explained that it considered the parties' sources of income, the resources they used

to litigate the case, the parties' education levels, the parties' assets, and the tax consequences. The court concluded: "Considering all the statutory factors including, but not limited to the short period of time the parties were together, the court finds that [appellant] should not receive spousal support from [appellee]." We therefore disagree with appellant that the trial court denied her request for spousal support based upon her decision to report appellee's domestic violence to law enforcement.

{¶ 92} As an aside, we do not intend to minimize appellant's position and her assertion that the trial court's decision has the effect of denying spousal support to a domestic violence survivor. Rather, we simply are unable to conclude that the trial court denied appellant spousal support based upon her decision to report appellee's domestic violence to law enforcement. Other evidence adduced during the trial court proceeding supports the trial court's conclusion.

{¶ 93} Accordingly, based upon the foregoing reasons, we overrule appellant's fifth assignment of error.

VI

{¶ 94} In her sixth assignment of error, appellant asserts that the trial court erred by failing to protect the children's records. She contends that the court's failure to protect the children's records conflicts with its findings in the domestic violence civil protection order.

{¶ 95} R.C. 3109.051(H)(1) states that a non-residential parent is entitled to access to a child's records, "unless the court determines that it would not be in the best interest of the child for the parent who is not the residential parent to have access to the records under those same terms and conditions." As with other parenting issues, we review a trial court's decision regarding a parent's access to a child's records for an abuse of discretion. *Gisslen v. Gisslen*,

2nd Dist. Montgomery No. 25666, 2013-Ohio-3840, 2013 WL 4782138, ¶ 22 (concluding that trial court did not abuse its discretion in prohibiting parent from directly contacting school employees and medical providers).

**{¶ 96}** In the case at bar, we are unable to conclude that the trial court abused its discretion by failing to restrict appellee's access to the children's records. Although appellant alleges that restricting appellee's access is necessary due to his prior domestic violence, appellant did not provide the court with any evidence that appellee continues to pose a threat to the children's welfare. We further note that the civil protection order expired in December 2018. *Martindale II* at ¶ 13.

**{¶ 97}** Accordingly, based upon the foregoing reasons, we overrule appellant's sixth assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & McFarland, J.: Concur in Judgment & Opinion
          For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.